IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

EMANUEL M. SISTRUNK,

        Plaintiff,

   v.

GUY HALL, Superintendent, Two
Rivers Correctional Institution;
JEAN HILL, Superintendent, Snake
River Correctional Institution;
LT. McMILLEN, Two Rivers Correctional
Institution; CAPTAIN RIDER, Two
Rivers Correctional Institution;
SECURITY MANAGER G. LANEY, Two Rivers
Correctional Institution; CAPTAIN
MEYER, Two Rivers Correctional
Institution; OPERATIONS CAPTAIN, Two
Rivers Correctional Institution;
CAPTAIN CAMPBELL, Snake River
Correctional Institution, JOHN DOE,
ODOC Employee, Two Rivers Correctional
Institution; JOHN DOE, Correctional
Officer, Two Rivers Correctional
Institution; all Defendants are sued
in their official capacities for
injunctive relief and in their personal
capacities for both injunctive and
monetary relief,

        Defendants.

Civil No. 3:09-cv-01122-BR

OPINION AND ORDER

1 - OPINION AND ORDER -

EMANUEL M. SISTRUNK
SID #4692082
Oregon State Penitentiary
2605 State Street
Salem, OR  97310

        Plaintiff *Pro Se*

JOHN R. KROGER
Attorney General
KRISTEN A. WINGES-YANEZ
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR  97301

        Attorneys for Defendants

BROWN, Judge.

Plaintiff, an inmate at the Oregon State Penitentiary, brings this civil rights action pursuant to 42 U.S.C. § 1983 *pro se*. Currently before the Court is Defendants' Motion for Summary Judgment (#52) and Plaintiff's Cross-Motion for Summary Judgment (#88). For the reasons that follow, the Court GRANTS Defendants' Motion for Summary Judgment (#52) and DENIES Plaintiff's Cross-Motion for Summary Judgment (#88).

## PROCEDURAL BACKGROUND

Plaintiff's First Amended Complaint alleges claims based on three different incidents which occurred while Plaintiff was housed at the Snake River Correctional Institution ("SRCI") and the Two Rivers Correctional Institution ("TRCI"). Plaintiff alleges Defendants violated his Fourth, Eighth, and Fourteenth

2 - OPINION AND ORDER -

Amendment rights in connection with three alleged assaults: two by different inmates and a third by a correctional officer. Plaintiff also alleges state law claims of assault, intentional infliction of emotional distress, and negligence arising from the same events. Plaintiff seeks injunctive relief in the form of a judgment enjoining Defendants from denying Plaintiff "a safe living environment" and an instruction to Defendants to listen to Plaintiff and "investigate and take action" when Plaintiff complains of "enemies being present." Plaintiff also seeks money damages.

Defendants move for summary judgment on the grounds that (1) Plaintiff's state law claims are improperly brought in this proceeding; (2) claims brought under § 1983 must be based upon an individual's personal involvement in depriving the Plaintiff's constitutional rights and cannot succeed under a *respondeat superior* theory; (3) Defendants did not violate Plaintiff's constitutional rights; and (4) Defendants are shielded from any liability to Plaintiff by the doctrine of qualified immunity. In response to Defendants' Motion for Summary Judgment, Plaintiff, as noted, filed his own Cross-Motion for Summary Judgment in which he argues he is entitled to judgment on the claims that Defendants failed to protect him from inmate assaults.[1]

---

[1] Plaintiff was advised of the requirements for responding to a motion for summary judgment by a Summary Judgment Advice Notice

3 - OPINION AND ORDER -

**SUMMARY OF FACTS**

The following facts are undisputed unless otherwise noted.

**I.   December 2007 Inmate Assault**

Plaintiff was housed at SRCI from May 6, 2004, to May 30, 2007, either in the Disciplinary Segregation Unit ("DSU") or in the Intensive Management Unit ("IMU"). On May 30, 2007, Plaintiff was transferred to TRCI. On November 28, 2007, Plaintiff was transferred from TRCI back to SRCI, where he was housed in the general population.

When Plaintiff was placed in the general population at SRCI on November 28, 2007, he had one documented conflict in the ODOC records system, with inmate Joseph Johnson. Plaintiff was transferred from TRCI to SRCI that date because Inmate Johnson was being released from the IMU into the general population at TRCI, and Plaintiff could not remain at TRCI.

On either December 5 or 6, 2007, Plaintiff was assaulted by another inmate. On December 6, 2007, Plaintiff was transferred to the SRCI infirmary, where he remained until December 11, 2007, when he was released back to the general population. While at the infirmary, Plaintiff was diagnosed with a fractured jaw.

On December 11, 2007, Plaintiff sent a written communication to a correctional officer about the December 5, 2007, assault. On

---

(#19) issued by the Clerk of the Court on April 16, 2010.

December 15, 2007, Plaintiff was interviewed about the assault. Plaintiff reported he was walking down a corridor to the inmate dining room with another inmate for the evening meal when an unknown assailant came up from behind and punched Plaintiff in the face. Plaintiff and the inmate with him were unable to identify the assailant. No security staff witnessed the assault. The assailant was never identified.

Although SRCI staff did not receive any reports of specific threats from Plaintiff in the period leading up to the December 5, 2007, incident, Plaintiff provides a copy of a March 25, 2007, kyte (inmate communication) addressed to Defendant Campbell. In it, Plaintiff stated he felt his life was in danger and requested a transfer to OSCI or OSP. Plaintiff, however, did not identify any specific inmate or group of inmates threatening him.

**II.  September 23, 2008, Incident**

Plaintiff was moved back to TRCI on January 2, 2008, and remained there until March 19, 2009. On September 23, 2008, Plaintiff was housed in TRCI's DSU where all inmates are required to be restrained when out of their cells. At approximately 8:40 p.m. on September 23, 2008, Corporal Shelly Tracy (formerly Shelly Sullivan) and Correctional Officer Jason Primmer escorted Plaintiff from the shower on the main floor back to his cell on the second tier while Plaintiff was in wrist restraints with his wrists positioned behind his back.

As the trio approached the bottom of the stairs leading to the second tier, Plaintiff was talking to another inmate. Corporal Tracy told Plaintiff to "hold up" so she could escort him up the stairs because she believed he was not paying attention to where he was stepping due to his conversation with the other inmate. According to Defendants, Corporal Tracy was reaching to gain control of Plaintiff's arm when Plaintiff tripped and fell forward on the stairs. As noted, however, Plaintiff alleges he was "pushed" from behind.

After Plaintiff fell, Corporal Tracy and Correctional Officer Primmer stood Plaintiff on his feet and Correctional Officer Primmer notified the Shift Sergeant that they needed the nurse. Plaintiff was escorted to the DSU medical room, where he was examined by Nurse Hernandez. Nurse Hernandez told Corporal Tracy and Correctional Officer Primmer that Plaintiff required stitches for a cut below his nose.

Plaintiff was transported to the hospital where he received treatment for a laceration below his nose and for a nose fracture. On September 27, 2008, Plaintiff returned to the hospital where a surgeon performed an open reduction internal fixation of Plaintiff's Le Fort I nasal fracture. On September 28, 2008, Plaintiff returned to the TRCI infirmary, where his recovery went well.

**III. March 17, 2009, Inmate Assault**

6 - OPINION AND ORDER -

According to Defendants, from the time Plaintiff arrived at TRCI on January 2, 2008, and before the incident on March 17, 2009, Plaintiff did not report to TRCI staff members Laney, Davis, or Nichols that Plaintiff was being threatened by other inmates. As noted, however, Plaintiff had one documented conflict with Inmate Johnson, who was transferred out of TRCI upon Plaintiff's arrival.

Defendant McMillen recalls responding to Plaintiff's inmate communications and grievances and remembers speaking with Plaintiff on a few occasions while he was in TRCI's DSU and in general population about Plaintiff's assertion that "security threat group" (STG) inmates were threatening Plaintiff, and Defendant McMillen spoke with his supervisor, Assistant Superintendent Laney, about Plaintiff and his accusations on several occasions. Although Defendant McMillen investigated Plaintiff's claims by speaking with housing unit staff and interviewing other inmates on the housing unit, Plaintiff never identified to Defendant McMillen any specific inmates threatening him, never pointed them out to Defendant McMillen or told him where they lived, and never told Defendant McMillen what STG group the inmates represented. Plaintiff told Defendant McMillen only that Plaintiff had enemies at TRCI and he was not safe there. In any event, McMillen and Laney were unable to verify Plaintiff's claims that he was in danger at TRCI.

7 - OPINION AND ORDER -

On March 17, 2009, at 8:15 p.m., Plaintiff was assaulted in the housing unit dayroom by inmate Hardy. After the altercation, Plaintiff was transported to the hospital for treatment of injuries to the left side of his face and jaw.

On March 18, 2009, Plaintiff returned to the TRCI infirmary. He had difficulty with edema and nausea, and was returned to the hospital emergency room for follow up care. The specialist who examined Plaintiff in the emergency room recommended Plaintiff be sent to OHSU for treatment of a fracture over the site of an old fracture repair. Plaintiff was transferred to OSP and on April 6, 2009, received surgical repair for his fractured jaw. At a follow up examination on November 18, 2009, Plaintiff was stable.

After inmate Hardy was identified as the assailant, he was subjected to disciplinary sanctions. Although there was no prior documentation or information to indicate inmate Hardy would assault Plaintiff, Hardy's name was noted in Plaintiff's records as a conflict so they will not be housed together again.

Plaintiff provides copies of eight inmate communications and one letter which span dates from January 16, 2008, to February 26, 2008. In them, Plaintiff speaks repeatedly of having enemies at TRCI and requests a transfer to OSP or OSCI. Plaintiff identifies threats as coming from "Blood gang" members, but does not identify any specific inmates. In two of the inmate communications, responses from correctional officers inform Plaintiff of the need

8 - OPINION AND ORDER -

to complete an Inmate Conflict Report form and submit it to staff. Plaintiff does not provide any evidence that he ever did so.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Id*. "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004) (citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936*, 680 F.2d 594, 598 (9th Cir. 1982)).

9 - OPINION AND ORDER -

When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dunn v. Castro*, 621 F.3d 1196, 1198-99 (9th Cir. 2010). To ascertain whether qualified immunity applies, the court determines whether a deprivation of constitutional rights occurred, and whether the constitutional right was clearly established at the time of the deprivation, though not necessarily in that order. *Pearson v. Callahan*, 555 U.S. 223, 232-36 (2009).

## DISCUSSION

### I. Claims Against Defendants Not Personally Involved in the Alleged Deprivation of Plaintiff's Rights

To state a § 1983 claim, a plaintiff must allege facts showing the deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992); *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989).

It is well settled that *respondeat superior* is not a proper basis for liability under 42 U.S.C. § 1983. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 691-694 (1978); *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976); *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987). An official may be individually liable under § 1983 if "he fails to properly supervise and control subordinates; acquiesces in the constitutional deprivations complained of; or engaged in conduct that shows 'reckless or callous indifference' to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations omitted). A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Finally, there must be a causal connection between the failure to supervise and the plaintiff's injury; specifically, the

11 - OPINION AND ORDER -

failure to train must result in the constitutional violation. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984).

Plaintiff has not alleged nor has he provided any evidence of any facts that would support a finding that Defendants Jean Hill, Guy Hall, or Sonny Rider personally participated in or directed the alleged violations of Plaintiff's rights or knew of such violations and failed to act to prevent them. Accordingly, Plaintiff's claims against Defendants Jean Hill, Guy Hall, and Sonny Rider fail as a matter of law, and, therefore, Defendants' Motion for Summary Judgment is granted and Plaintiff's Cross-Motion for Summary Judgment is denied as to these Defendants.

## II. Failure to Protect Plaintiff From Inmate Assaults

The treatment a prisoner receives in prison and the conditions of his confinement are subject to scrutiny under the Eighth Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). A prisoner may state a § 1983 claim under the Eighth Amendment against prison authorities who act with deliberate indifference to the threat of serious harm or injury by another prisoner. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). As the Supreme Court has explained,

> The [Eighth] Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical

12 - OPINION AND ORDER -

> care, and must take reasonable measures to guarantee the safety of the inmates[.] In particular, as the lower courts have uniformly held, and as we have assumed, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations and quotations omitted). A prison official violates a prisoner's Eighth Amendment rights only when two requirements are met. *Id*. (citing numerous cases establishing two-part Eighth Amendment inquiry). That is, an Eighth Amendment claim must satisfy both an objective and subjective inquiry. *Lopez v. Smith*, 203 F.3d 1122, 1132-33 (9th Cir. 2000).

The objective element of the Eighth Amendment inquiry seeks to determine whether the deprivation was sufficiently serious. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). For a claim based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Helling*, 509 U.S. at 35.

The subjective element requires a showing that a defendant acted with a sufficiently culpable state of mind. "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from

13 - OPINION AND ORDER -

which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

In the context of a failure-to-protect claim, deliberate indifference "does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault," but it does require that the official "have more than a mere suspicion that the attack will occur." *Berg*, 794 F.2d at 459 (citation omitted). Deliberate indifference is evaluated in this context by considering "whether, in allegedly exposing the prisoner to danger, the defendant prison official(s) were guided by considerations of safety to other inmates, whether the official(s) took 'prophylactic or preventive measures' to protect the prisoner, and whether less dangerous alternatives were in fact available." *Id*. at 462 (citation omitted).

Although Plaintiff certainly establishes he was assaulted by inmates on two occasions, Plaintiff has failed to offer any evidence to support a finding that any of the named Defendants acted with deliberate indifference to a substantial risk of harm to the Plaintiff. With respect to the December 2007 assault, Plaintiff offers only the single inmate communication dated some nine months earlier in which Plaintiff stated, at best, vague

14 - OPINION AND ORDER -

concerns about his safety.  Plaintiff presents no evidence that he identified any individual inmate or specific group as a threat at that time or that he followed any of the steps required to document an inmate conflict and to permit Defendants to investigate and potentially prevent any threat of assault.

As to the March 17, 2009, assault, Plaintiff relies on inmate communication forms he submitted over a year before the assault. While Plaintiff referred to conflicts with members of the "Bloods gang," Plaintiff did not identify any individual inmate who was a threat to Plaintiff.  Although correctional officials responded on at least two occasions by specifically informing Plaintiff of the need to complete and submit an Inmate Conflict Form, Plaintiff did not do so.

To the extent Plaintiff seeks injunctive relief to protect him from future inmate assault, he has not established such relief is warranted.  To survive summary judgment, a prisoner "must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer*, 511 U.S. at 846.  Plaintiff presents no evidence

15 - OPINION AND ORDER -

that Defendants are unreasonably disregarding any substantial risk of harm to Plaintiff from other inmates; to the contrary, the evidence shows Defendants have taken proactive steps to prevent future harm.

Finally, the Ninth Circuit has noted that "the legal standard [of deliberate indifference] must not be applied to an idealized vision of prison life, but to the prison as it exists, and as prison official(s) are realistically capable of influencing." *Berg*, 794 F.2d at 462.  The Court notes Plaintiff's inmate communications allude to incidents in which Plaintiff engaged in behaviors that may have generated some measure of ill will among his fellow inmates, and Plaintiff refers to numerous placements in disciplinary segregation for his participation in mutual fights. Plaintiff himself states he was transferred on more than one occasion and apparently convicted and sentenced in criminal court as a result of his involvement in altercations.  While Defendants nevertheless must meet their obligations respecting Plaintiff's Eighth Amendment rights, it appears the prison officials' attempts to address Plaintiff's safety concerns here were made more difficult by Plaintiff's own behavior.

In short, with respect to Plaintiff's claims involving the two inmate assaults, Plaintiff has not shown that triable issues exist as to whether any one of the Defendants acted with deliberate indifference to Plaintiff's safety, and, therefore,

Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment failure-to-protect claims arising from those assaults.[2]

### III. Alleged Correctional Staff Assault

The sole evidence Plaintiff provides in support of his claim that staff members at TRCI assaulted him is the verified statement in his First Amended Complaint:

> John Doe, ODOC Employee, Two Rivers Correctional Institution, on September 27, 2008, while escorting me up the stairs in TRCI DSU pushed me down on the stairs with my hands handcuffed behind my back. I suffered a broken jaw again, re-injuring the jaw broken at SRCI as stated in Claim One. Doe pushed me down on purpose with malice aforethought.

Plaintiff, however, presents no evidence to refute Corporal Tracy's statement that she was reaching for Plaintiff's arm when he tripped and fell on the stairs.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). An Eighth Amendment excessive force claim requires that a plaintiff show more than a *de minimis* use of force and while a prisoner may believe that his rights have

---

[2]As such, the Court does not address Defendants' arguments as to whether Plaintiff's injuries were sufficiently serious (except to note in passing that the resulting hospitalizations suggest they were) and concerning Defendants' qualified immunity defense.

17 - OPINION AND ORDER -

been violated, "[n]ot every push or shove . . . violates a prisoner's constitutional rights." *Hudson*, 503 U.S. at 9-10 (internal quotation and citation omitted).

When this record is viewed in the light most favorable to Plaintiff, the Court concludes Plaintiff has failed to offer sufficient evidence from which a rational juror could find, without speculation, that Corporal Tracy acted with the requisite malicious intent to create a jury question as to an Eighth Amendment violation arising from her contact with him on September 23, 2008.  As such, Defendants are entitled to summary judgment on this claim.

## IV.  State Law Claims

Defendants contend that the Oregon Tort Claims Act ("OTCA") requires that the State of Oregon be substituted as the only defendant for Plaintiff's state law claims, and, once the State is substituted, Eleventh Amendment immunity attaches and Plaintiff's claims in this federal court fail as a matter of law because Oregon has not waived its sovereign immunity.

Oregon law requires that "the sole cause of action for any tort of officers, employees, or agents of a public body acting within the scope of their employment or duties . . . shall be an action against the public body only." Or. Rev. Stat. § 30.265(1). The rule applies only where the state agent acted within the scope

18 - OPINION AND ORDER -

of their employment duties. *Hesseldahl v. Oregon Dep't. of Veterans' Affairs*, Civil No. 05-1649-TC, 2007 WL 1541502, at *4 (D.Or. May 23, 2007). Under Oregon law, the court should consider the following factors in analyzing whether an employee was acting within scope of employment for purposes of § 30.265(1): (1) whether the employee's actions occurred substantially within the time and space limits authorized by the employment; (2) whether the employee was motivated at least partially by a purpose to serve the employer; and (3) whether the act was of a kind that the employee was hired to perform. *Bruttgardt v. Barton*, 69 Or. App. 440, 443, 685 P.2d 1021, 1023 (1984) (citing *Stanfield v. Laccoarce*, 284 Or. 651, 655, 588 P.2d 1271 (1978)).

Here, even viewing the record in the light most favorable to Plaintiff, the Court cannot find that a reasonable factfinder would conclude that any of the Defendants' actions were taken outside the scope of their employment. All of Plaintiff's allegations relate to actions taken or not taken by various correctional officers during the course of Plaintiff's incarceration. Thus, for purposes of the OTCA, Defendants were acting within the scope of their employment and the State of Oregon is the proper Defendant for Plaintiff's state law claims. If, however, the State is substituted as the Defendant, Eleventh Amendment immunity applies, unless Oregon has waived it.

19 - OPINION AND ORDER -

Although the State of Oregon has consented to be sued in Oregon state courts for torts committed by its employees, agents, and officers acting within the scope of their employment under the OTCA, it has not explicitly waived its immunity to such claims in federal court. *Cram v. Oregon*, Civil No. 08-6365-HO, 2010 WL 1062555, at * 3 (D.Or. March 23, 2010) (citing *Blair v. Toran*, Civil No. 99-956-ST, 1999 WL 1270802, at *23 (D.Or. Dec. 2, 1999)). Because Oregon has not waived its Eleventh Amendment immunity for tort claims, Plaintiff's state law claims in this Court are barred by the Eleventh Amendment, and Defendants are entitled to summary judgment.

## CONCLUSION

For these reasons, the Court GRANTS Defendants' Motion for Summary Judgment (#52) and DENIES Plaintiff's Cross-Motion for Summary Judgment (#88). This action is DISMISSED. The dismissal of Plaintiff's claims brought under 42 U.S.C. § 1983 is WITH PREJUDICE. The dismissal of Plaintiff's state law claims is WITHOUT PREJUDICE to Plaintiff's right to pursue these claims in an appropriate forum.

IT IS SO ORDERED.

DATED this <u>19th</u> day of April, 2012.

                        /s/ Anna J. Brown
                        ANNA J. BROWN
                        United States District Judge